WILLIAM T. McCAFFREY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 58743.   Promulgated November 6, 1935.

*Edward Schoeneck, Esq.*, for the petitioner.
*M. B. Leming, Esq.*, for the respondent.

OPINION.

LEECH: Our finding that petitioner did not exercise the seven options in question until March 13, 1928, determines the issue submitted. That conclusion was reached after careful examination of the record and consideration of the argument of counsel. Petitioner contends that the options were exercised in January 1925, but we think the clear weight of the evidence is against that contention.

Petitioner argues that in January 1925 he exercised all seven of these options by calling upon one Lannin and stating to him that he was willing, and would consider himself unqualifiedly bound, to take the optioned stock. It is his position that Lannin was a qualified representative of the seven banks, that such statement made to him was effective as an exercise of the option with each of those banks, and that thereafter, he was unqualifiedly bound to accept delivery of the stock.

In the first place the record does not show to our satisfaction that Lannin was empowered and authorized to represent the several banks in any change or modification of the several option agreements. These agreements provided specifically that the exercise of the option rights should be in writing by the optionee, designating the amount of the stock in respect of which he desired to exercise his option. It appears that Lannin was the president of the Rochester Clearing House Association and, no doubt, the several banks looked to him to keep them advised and generally direct matters in connection with the newly organized bank, in which, through necessity, they had taken interests. His action for these banks so far as the record discloses, was entirely informal and premised upon the position he occupied in the association composed of the several banks. The argument of petitioner's counsel that, even if Lannin had not been authorized by the several banks to act for them in the exercise of the options, these banks had ratified and confirmed his representation, is without merit. We do, however, call attention to the fact that the delivery of stock, under the orders given by petitioner on March 13, 1928, is no evidence of confirmation of any action taken theretofore by Lannin. This order was within the period of the option in each case, and, irrespective of any conversation between petitioner and Lannin, was an express exercise of the option, in the manner prescribed by its terms.

Moreover, it is difficult to reconcile his statement of a definite verbal agreement with Lannin, with other facts appearing here. We

are without Lannin's testimony, due to his death prior to the hearing, but the testimony of most of the witnesses produced by petitioner in an endeavor to prove statements by Lannin to them, substantiating an understanding between petitioner and the latter, constituting a definite exercise of the options, not only fails to substantiate petitioner's position, but strongly indicates that no such agreement was reached.

Arthur B. Clark, later vice president of petitioner's bank, but in 1925 a New York state bank examiner, when introduced as petitioner's witness at the hearing, testified that in making an examination of the Merchant's Bank of Rochester, one of the optionor banks, some two months after Haight's death, he noted in its schedule of assets its holdings in National Bank of Rochester stock and, as the law prohibited investments of this character by that bank, he questioned this item and was referred to Lannin for advice as to the exact status of the investment. He further testified that on questioning Lannin the latter advised him that he " expected Mr. McCaffrey would exercise an option he held on this stock." This advice was given Clark by Lannin subsequent to the conversation of petitioner with Lannin which petitioner here asserts was definite exercise of the option. Foulkes, another witness for petitioner and a director in the National Bank of Rochester in 1925, testified that following petitioner's conference with Lannin he called on the latter and was advised that " he understood from his talk with McCaffrey that the option was going to be exercised." The testimony of both of these witnesses indicates strongly that Lannin's understanding of his talk with the petitioner was merely that the latter had assured him of his intention *to exercise* the options. It is shown that following petitioner's talk with Lannin no change was made by the seven banks on their records, evidencing the transfer of any beneficial interest in the stock to petitioner. The stock remained in their investment accounts. No indebtedness was set up as due from this petitioner. Likewise, in March 1928, upon receipt from petitioner of directions to deliver the stock to the Chemical National Bank, the several banks computed the purchase price at $125 a share, plus interest from May 17, 1924, to that date, whereas, under the option contract they would have been entitled to a sum computed at $125 per share, plus interest from May 17, 1924, to the date in January 1925 when petitioner contends the options were exercised, and interest upon this total sum to the date of delivery of the stock, if petitioner's contention as to the date of exercise of the option were correct.

The record further shows that, upon the sale of this stock through the Rochester Holding Co. at $275 per share, the question was raised by the executor of Haight's estate as to its right to participate in

the profit accruing to petitioner, upon the ground that Haight was the joint owner of the options and participated in a joint venture with petitioner. It is established that petitioner effected a settlement of this claim by payment of $50,000 of the amount received upon the sale of stock and that it became necessary to secure the approval by the probate court of that settlement. In this connection petitioner filed with that court his affidavit, purporting to set out in detail the facts in connection with the granting and exercise of the seven options. In this affidavit, presented to the court, and the basis for the court's approval of the settlement made, petitioner states that, at the time of Haight's death, and for two years following that time, the position of the National Bank of Rochester was very hazardous and the future value of the stock was very uncertain. He stated further in his affidavit that in March 1928, he " became concerned about the option held by him for the purchase of the stock from the banks, inasmuch as deponent realized that should he die, or for any reason his position with the National Bank of Rochester should cease, the option for the stock would fall ", and that " the options were exercised by deponent on March 13, 1928 * * *."

In addition to this evidence which, obviously, has great weight against petitioner's assertion of a definite and unqualified exercise of the seven options in January 1925, it is difficult to believe that a binding agreement would be thus executed by two careful business men, both bankers of experience, involving the acquisition of approximately $1,000,000 in property without that action being reduced to writing or evidenced in some way more definite than the mere recollection of the parties. The utmost care was taken in the drafting of the option agreements. These contracts are full and complete. They prescribe specific conditions and the particular mode of exercise to be followed. That the exercise of the options under these circumstances would be effected by a verbal statement, in the course of an informal conversation without even so much as a subsequent confirmation by letter, seems, at the least, a most unusual method, and one denoting a lack of business care and judgment utterly inconsistent with men of the character of the petitioner and Lannin, as revealed by the record.

It may well be that petitioner, now, after the lapse of many years, is convinced that his assurance to Lannin represented an unconditional and binding exercise of the options, but the evidence to the contrary indicates overwhelmingly to us that Lannin took from that conference no understanding of an absolute and unconditional exercise of the options, but only an assurance that petitioner *would* exercise them before their expiration. Cf. *Lucas* v. *North Texas Co.*,

281 U. S. 11; *Commissioner* v. *North Jersey Title Ins. Co.*, 79 Fed. (2d) 492.

Having found that the options in question were not exercised until March 13, 1928, the same year in which the stock was sold, and the profit here in controversy realized, it follows that such profit, accruing from the sale of assets held less than two years, is not subject to the rate for capital gain but to normal tax and surtax.

*Judgment will be entered for the respondent.*